UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ANGEL ORTIZ ANGLERO AND REINALDO ILARRAZA MEDINA | * * * | 04 AUG 30 PM 3 55 |
| | * | CIVIL NO. 97-2437 (CCC) |
| Plaintiffs | * | U.S. DISTRICT CT. SAN JUAN P.R. |
| | * | |
| vs. | * | JURY TRIAL REQUESTED |
| | * | |
| CROWLEY TOWING AND TRANSPORTATION COMPANY AND SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATERS DISTRICT, AFL-CIO | * * * * * * | |
| Defendants | * | |

* * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ORLANDO RODRIGUEZ et al. | * | |
| | * | CIVIL NO. 98-1548 (CCC) |
| Plaintiffs | * | |
| | * | JURY TRIAL REQUESTED |
| vs. | * | |
| | * | |
| CROWLEY TOWING AND TRANSPORTATION COMPANY et al. | * * * | |
| Defendants | * | |

* * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FOR SUMMARY JUDGMENT AS TO PLAINTIFFS CLAIMS**

**TO THE HONORABLE COURT:**

Plaintiffs in CIVIL NO. 97-2437, by and through counsel, respectfully allege and pray:

STATEMENT OF THE CASE

This is a civil action brought under Section 301(a) of the Labor-Management Relations Act (29 USC 185(a)) on September 26,

1

1997 by two former employees of defendant Crowley Towing and
Transportation Company, hereinafter Crowley, who were discharged
by said employer in violation of the seniority rights secured to
them by the labor contract signed between Crowley and defendant
Seafarers International Union of North America, Atlantic, Gulf,
Lakes and Inland Waters District, AFL-CIO, hereinafter SIU, who
failed to give adequate representantion to said plaintiffs to
prevent Crowley's contractual violations. Thus, it is a hybrid
suit under Section 301 of the Labor Management Relations Act
("LMRA"), which entails a breach of a collective bargaining
agreement claim against an employer and a violation of the duty
of fair representactaion against a labor organization.

Besides including the Section 301 hybrid cause of action,
plaintiffs ANGEL ORTIZ ANGLERO and REINALDO ILARRAZA MEDINA add
claims for violations under the Puerto Rico Wrongful Discharge
Statute, Law 80 of May 30, 1976 (29 P.R. Laws, Sections 185a-
185m) and Article 1802 of the Puerto Rico Civil Code (31 P.R.
Laws, Section 5141).

## STANDARD FOR SUMMARY JUGDMENT

A motion for summary judgement is appropriate and must
be granted under Fed. R. Civ. P. 56(c)if:

> "[T]he pleadings, depositions, answer to interro-
> gatories, and admissions of the file together with
> the affidavits, if any, show that there is no
> genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter

2

of law".

In <u>Prokey v. Watkins, et al.</u>, 942 F.2d 67 (1st Cir. 1991), the
Court of Appeals for the First Circuit reiterated the well
established rule regarding the appropriateness of summary
judgement:

> "Summary judgement is only appropriate when the
> pleadings and other submissions 'show there is no
> genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter
> of law.' Fed. R. Civ. P. 56(c). To demonstrate
> that no genuine issue of material fact exists, the
> moving party must point out 'an absence of
> evidence supporting the nonmoving party's case'.
> <u>Draury v. Smith</u>, 842 F.2d 9,11 (1st Cir. 1988)".

The moving party invariably bears both the initial bur-
den and the ultimate burden of demonstrating entitlement to
summary judgment. <u>López, et al. v. Corporación Azucarera de
Puerto Rico</u>, 938 F.2d 1510, 1515 (1st Cir. 1991); <u>Celotex
Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986); <u>Adickes v.
Kress & Co.</u>, 398 U.S. 144, 157 (1970). Most importantly, *the
moving party can not prevail if any essential element of its
defense requires trial.* <u>López</u>, at 1516; <u>Meyers v. Brooks
Shoe, Inc.</u>, 912 F.2d 1459, 1461 (Fed. Cir. 1990).

At this summary judgment stage, the role of this Court
is never to weigh evidence or find the facts. Instead, the
Court's role under F.R.Civ.R. 56 is narrowly limited to

3

assessing the threshold issue of whether a genuine issue
exists as to material facts requiring a trial. See <u>Anderson</u>
<u>v. Liberty Lobby, Inc.</u>, 477 US 242, 249, 106 S.Ct. 2505,
2510 (1986). The Supreme Court recently and directly reite-
rated this precept, stating that, in the summary judgment
context "the court should review all of the evidence in the
record" and that:

> "In doing so, however, the court **must draw all
> reasonable inferences in favor of the nonmoving
> party, and it may not make credibility determina-
> tions or weigh the evidence.** <u>Lytle v. Household</u>
> <u>Mfg., Inc.</u>, 494 U.S. 545, 554-555 (1990); <u>Liberty</u>
> <u>Lobby, Inc.</u>, *supra*, at 254; <u>Continental Ore. Co.</u>
> <u>v. Union Carbide & Carbon Corp.</u>, 370 U.S. 690,
> 696, n. 6 (1962). "Credibility determinations, the
> weighing of evidence, and the drawing of legitima-
> te inferences from the facts are jury functions,
> not those of a judge." <u>Liberty Lobby</u>, *supra*, at
> 255. **Thus, although the court should review the
> record as a whole, it must disregard all evidence
> favorable to the moving party that the jury is not
> required to believe.** See Wright & Miller 299".

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, ___ U.S. ___,
120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). (Emphasis ours).

Therefore, the evidence of the non-moving party will be
believed as true, all doubts will be resolved against the
moving party, all evidence will be construed in the light
most favorable to the non-moving party and all reasonable
inferences will be drawn in the non-moving party's favor.

4

Eastman Kodak Co. V. Image Tech. Servs., Inc., 504 US 451,
456, 112 S.Ct. 2072, 2076 (1992); Anderson, supra. at US
255, S.Ct. 2513.

   Furthermore, this Court should recall the explicit di-
rective of the Court of Appeals for this Circuit regarding
summary judgment motions. It has stated clearly that "[n]ot-
withstanding that recent case law has invited greater use of
Rule 56, the test remains a fairly vigorous one." Lipsett v.
U.P.R., 864 F.2d 881, 895 (1st Cir. 1988) (emphasis added).
See also Prokey v. Watkins, et al., 942 F.2d 67 (1st. Cir.
1991).

UNDISPUTED FACTS

   CROWLEY TOWING AND TRANSPORTATION COMPANY was involved in
the business of providing tugboat services in Puerto Rico. Most
of its opertations consisted in furnishing assistance in the
docking and undocking of vessels in San Juan harbor, and in the
towing of cargo barges from the United States and foreign ports
into San Juan. It employed about 250 workers in its San Juan
operations, of which about 185 were covered by a labor agreement
signed between Crowley and Seafarers International Union (SIU)
titled "Unlicensed Agreement Between the Seafarers International
Union of North America, Atlantic, Gulf, Lakes and Inland Waters
District, AFL-CIO and Crowley Towing and Transportation Company,

July 1, 1996 through June 30, 1999".

Both plaintiffs were employed by Crowley in the classification of Engine Utilities (the position is also known as "Engineer") and were covered by the collective bargaining agreement signed between defendants, which was in effect from July 1st., 1996 through June 30, 1999.

On December 18, 1996 Crowley notified SIU that it would be permanently closing its operations in Puerto Rico, effective January 31st., 1997.[1] On January 13, 1997, SIU acknowledged receipt of the December 18 notification and demanded immediate negotiations over the impact of Crowley's decision.[2]

As a result of these negotiations, on April 17, 1997 Crowley and SIU signed an Stipulation that established in its introductory part, under three WHEREAS, that Crowley closed its operations, effective March 1st, 1997; that "[pursuant to the requirements of the National Labor Relations Board, the [parties] have met to negotiate the effects of the closing of operations of the Company on the employees represented by the Union described in the appropriate unit of the Collective Bargaining Agreements between the parties that entered into effect on July 1, 1996 and expires on June 30, 1999"; and that "[o]n April 17, 1997 the

---

[1]See Crowley's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit 3.

[2]See Exhibit 1.

6

parties concluded the negotiations of the effects of the closing
of operations on the employees and **reached the agreement establi-
shed in the present Stipulation**".[3]

The April 17, 1997 Stipulation established in its first
clause that "[t]he employees... described in the preamble of this
Stipulation were terminated from employment effective March 1,
1997. The Union recognizes and accepts that even through the Com-
pany closed operations effective March 1, 1997, there remains
residual work. Therefore, there is a group of employees who have
remained working in the residual work the Company is performing
related to the Bulk Petroleum Operations Contracts and the Cari-
bbean Protector, until these contracts expire. This residual work
is being performed by a group of employees **on the basis of their
date of hire seniority.** As the residual work concludes, the Com-
pany will terminate these employees **on the basis of their date of
hire seniority**".[4] Besides, it established in its seventh clause
that "[t]he Collective Bargaining Agreements described in this
Stipulation will remain in effect until its expiration, June 30,
1999", and it stated in its eight clause that "[w]ith these
agreements the parties have concluded the effects negotiations of

---

[3]Crowley's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit
9, emphasis added.

[4]Crowley's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit
9, emphasis added.

the closing of operations of the Company".

On February 10, 1997 plaintiffs had received a SIU memoran-
dum informing them the permanent termination of Crowley opera-
tions in San Juan, effective March 1997.

On March 21, 1997 plaintiffs were notified verbally that
that was their last working day and on April 1st., 1997 they
received a letter of termination of employment from Crowley dated
March 27, 1997.

On that same date, April 1st., 1997, plaintiffs filed a
grievance with SIU alleging violation of their contractual
rights, specifically their seniority rights protected by Article
IV, Section 1, of the Collective Bargaining Agreement since
employees with less seniority and years of services than plain-
tiffs, among them René Vázquez, Richard Hollis, Rafael Campos,
Alfonso Morales, Robert Merrit, John Gabice and Patterson Brian,
remained working for Crowley as engineers.[5]

On May 12, 1997 SIU informed plaintiffs that the union had
"investigated their April 14 grievances" and that the employer
had denied each grievance because "seniority was based on quali-
fications" and the "grievance is time barred".[6]

SIU did not inform plaintiffs then that Crowley and SIU bar-
gained and agreed that after the shutdown date a number of em-

---

[5]See Exhibits 2, 3 and 6.

[6]See Exhibits 4 and 5.

8

ployees would be retained to perform residual work and that these
"employees were selected for retention based upon a combination
of seniority and qualifications". Besides, the April 17, 1997
Stipulation did not mention nor include the word "qualifications"
in reference to the residual work. The Stipulation stated litera-
lly: "This residual work is being performed by a group of em-
ployees **on the basis of their date of hire seniority.** As the re-
sidual work concludes, the Company will terminate these employees
**on the basis of their date of hire seniority".**[7]

SIU only informed plaintiffs then that because Crowley
"acted in accordance with its collective bargaining agreement
with the union" SIU had decided "not to take th[e] grievance[s]
to arbitration".

Plaintiffs filed their grievances with SIU on April 1st.,
1997, the same day they recieved their discharge letters. Thus,
their grievances were filed on time and the same could not be
rejected "as time barred", except due to SIU's inadequate hand-
ling of plaintiffs' grievances.

Furthermore, plaintiffs were excellent and highly skilled
employees, who had worked with EMD (Electric Motive Division)
machines, and Crowley had no proper or legitimate business justi-
fication to discharge them and their discharges were executed in

---

[7]Crowley's Memorandum of Law in Support of Motion for Summary Judgment, Exhibit
9, emphasis added.

9

violation of the seniority provision of the labor agreement the

and April 1997 Stipulation, since Crowley retained personnel with

less seniority (years of employment) than plaintiffs to perform

the residual work in positions that plaintiffs could occupy and

for which they were fully qualified.

## ARGUMENT

A.  SECTION 301 CLAIM

Section 301(a) of the Labor Management Relations Act of

1947, as amended (29 USC 185(a)), states:

> "Suit for violations of contracts between an employer and a
> labor organization representing employees in an industry
> affecting commerce as defined in this Act, or between any
> labor organizations, may be brought in any district court of
> the United States having jurisdiction of the parties, with-
> out respect to the amount in controversy or without regard
> to the citicenship of the parties".

In the instant case, plaintiffs filed a hybrid breach of

contract/breach of duty of fair representation action arising

under Section 301, which provides for "[s]uit for violations of

contracts between an employer and a labor organization represen-

ting employees".

An employee states a "hybrid claim" when he alleges that his

employer breached the applicable collective bargaining agreement

in violation of Section 301, and that his union breached its duty

of fair representation. See Del Costello v. International Bro-

therhood of Teamsters, 462 US 151, 163-165 (1983). The employee

must "prove both that the employer broke the the collective bar-

10

gaining agreement and that the union breached its duty of fair
representation, in order to recover against either the employer
or the Union". Chaparro-Febus v. International Longshoremen
Ass'n. Local 1575, 983 F.2d 325, 330 (1st. Cir. 1992).

Just as a trustee must act in the best interest of the bene-
ficiaries of a trust, a union, as the exclusive representative of
the workers, must exercise its power to act on behalf of those
workers in good faith. Vaca v. Sipes, 386 US 171, 177 (1967). A
suit against a union for breach of the duty of fair representa-
tion is analogous to a claim by a trust beneficiary against a
trustee for breach of its fiduciary duty, an equitable claim. A
suit against an employer for breach of a collective bargaining
agreement is comparable to a breach of a contract claim, a legal
claim. Chauffers, Teamsters & Helpers, Local 391 v. Terry, 494 US
558 (1990).

To prevail, plaintiffs have to prove that Crowley violated
the terms and conditions of the labor contract and that the union
breached its duty of fair representation. Hines v. Anchor Motor
Freight, inc., 424 US 554, 570 (1976).

In the instant case, Crowley, as well as SIU, do not dispute
that employees with less seniority that plainstiffs Ortiz and
Ilarraza, who were engine utilities, were assigned to do residual
work after March 1997. However, they contend that since, as re-
quired by the National Labor Relations Act, they bargained at

11

length about the effects of the shutdown, they agreed that the residual work for the positions of Captain, Engine Utility and Tankmen would be filled based on qualifications and seniority.

It is plaintiffs position that, while no such bargaining between them could produce results contrary to the rights guaranteed by the collective bargaining agreement to herein plaintiffs, nevertherless the Stipulation signed by Crowley and SIU on April 17, 1997 about the effects of the shutdown states that the residual work "is being performed by a group of employees, taking in consideration the seniority of the day they were employed by the Company". Thus, the word "qualification" or "qualifications", or any equivalent, is not mentioned at all in the Stipulation.

Therefore, it is evident that only seniority, and not seniority and qualifications, did apply as to the residual work and that Crowley violated both the collective bargaining agreement and the April 17, 1997 Stipulation, by failing to assign this work to herein plaintiffs and, instead, discharge them a that time, in the instant case.

Since plaintiffs did establish that Crowley violated both the Collective Bargaining Agreement and the April 17, 1997 Stipulation in the instant case, the SIU had a duty to represent them and process their grievances to enforce the terms of the agreement, since both plaintiffs had meritorious grievances. Failure to process a meritorious grievance constitutes proof of arbitrary

conduct sufficient to conclude that the union failed its duty of fair representation towards plaintiffs and is legally liable. See De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281 (1st. Cir. 1970) (lack of investigation of a meritorious grievance constitute a breach of the duty of fair representation); Ruzicka v. General Motors Corp., 523 F.2d 306 (6 Cir., 1975) (a breach was found where the union representative simpliy forgot to file a written statement of the grievance necessary to invoke arbitration); Milstead v. International Brotherhood of Teamsters, 580 F.2d 232 (6th Cir., 1978) (a breach occurred when the grievance was lost because the union representative was not aware of the seniority provision contained in an applicable collective bargaining agreement).

Thus, if the employee establishes that he had a meritorious grievance, as herein plantiffs did establish, the union's failure to process the grievance amounts to a breach of its duty of fair representation. Hines v. Anchor Motor Freight, inc., 424 US 554, 570 (1976).

As a remedy for these violations, defendants owe plaintiffs their salaries and benefits for the period that the residual work was performed by union employees with less seniority that herein plaintiffs.

B.    LAW 80 CLAIM

Plaintiffs' claim for violation under the Puerto Rico

13

Wrongful Discharge Statute, Law 80 of May 30, 1976 (29 P.R. Laws, Sections 185a-185m), is also appropriate in the instant case.

While it is true that the dismissal of employees resulting from the total closing of operations of a company is for "good cause" under Law 80 of May 30, 1976, as affirmed by Crowley in its memorandum of law (at pages 15-16, 31-32), when the closing of operations is not complete, but partial or temporary, and until it is complete closure of operations, the company has to comply with Section 185(c), which reads as follows:

"In any case where employees are discharged [for full, temporary or partial closing of operations], it shall be the duty to retain those employees of greater seniority on the job with preference... except... in those cases where there is a conclusive difference in favor of the efficiency or capacity of the workers compared, in which case the capacity shall prevail..."

That provision applies in cases where the employees have the same seniority, not different seniority dates, as was the case of plantiffs, whose seniority dates were 1981 (Ortiz) and 1983 (Ilarraza), while the employees who remained doing the residual work had seniority dates of 1991 (Rafael Campos), 1993 (Brian Patterson and Richard Hollis), 1994 (John Gabice) and 1996 (René Vázquez). In that case, plaintiffs had to be retained as long as there was any residual work left. Thus, a violation of Law 80 was established, since plaintiffs had more seniority than the employees that were retained to perform the residual work.

WHEREFORE, plaintiffs respectfully request the Court to

14

deny defendants' motion for summary judgment and grant their motion for summary judgment.

I certify that on this same date I sent copy of the fore-going motion to attorney Ana Rosa Biascoechea, to P.O. Box 195332, San Juan, PR 00919-5332; to attorney Raquel M. Dulcaides, to fax 751-4068 and to P.O. Box 366104, San Juan, PR 00936-6104; to Ellen Silver, Esq., 5201 Auth Way, Camp Springs, Maryland 20746 and to attorney J.H. Zidell, to fax 305-865-7167 and to City National Bank Building, 300 71 St. #605, Miami Beach, FL 33141.

Respectfully submitted, this $3 0$ day of August 2004.

LUIS AMAURI SUAREZ ZAYAS, ESQ.
US DISTRICT COURT NO. 118903
CALLE FELIPE GOYCO 503
SAN JUAN, PUERTO RICO 00915
TELS. 726-5592, 761-3037
Fax 787-726-0954

15